FILED & JUDGMENT ENTERED
Steven T. Salata

May 10 2012

Clerk, U.S. Bankruptcy Court
Western District of North Carolina

J. Craig Whitley
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NORTH CAROLINA
Shelby Division

| | |
|---|---|
| In re: ) | |
| ) | Case No. 11-40527 |
| FLOYD H. WINN and ) | Chapter 13 |
| BONNIE M. WINN, ) | |
| ) | |
| Debtors. ) | |
| ) | |

### ORDER GRANTING DEBTORS' MOTION TO MODIFY PLAN

**THIS MATTER** is before this Court upon the Motion to Modify Plan filed by Debtors Floyd H. and Bonnie M. Winn on February 29, 2012, the Trustee's Response dated March 7, 2012, and his Amended Response filed March 16, 2012.

These Debtors filed a Chapter 13 case in this Court on August 19, 2011. A First Meeting of Creditors was held on October 14, 2011, and the Winns' Plan was confirmed on November 3, 2011. This is primarily a case to deal with mortgage debt. The Winns owe just under $1 million of secured debt on three residential properties: a primary residence in Tryon, NC, another house in Florida, and a small house in Latta, SC. By contrast, the Winns owe only $23,268.04 to unsecured creditors. Debtors' Mot. to Modify Plan ¶ 3, ECF No. 16.

The Winns' brief effort to save their primary residence failed. After a brief attempt to make the necessary plan payments ($4,620 per month) and having found these to be untenable, the Winns now propose to surrender the Tryon, NC, residence to foreclosure and remove the mortgage payment from the Plan. By separate order, the Winns sold their Florida home and retired that secured debt. Unburdened by these mortgage debts, the Winns propose to reduce their payments to $490 per month.

No one opposes surrender of the Tryon home or a reduction of the Winns' plan payment. The present dispute is over the required amount of the new payment. The Winns have proposed the lowest monthly payment sufficient to repay creditors in full over the 60 month plan period prescribed by 11 U.S.C. § 1325(b)(4). The Trustee objects, seeking a higher monthly payment and a shorter payout period to creditors.

The Trustee argues the Winns could afford a higher plan payment if their prospective monthly expenses were further reduced. Having surrendered their primary residence, the Winns propose to lease a house in Tryon for $3200 per month. The Trustee believes this rental to be excessive and likely unaffordable (as it is only $279 less than the mortgage payment on the surrendered residence). Second, the Trustee objects to the Winns continuing to pay the $550 monthly mortgage payment on their South Carolina property. The Winns obviously do not live in this property, and there is no equity in the same; thus, the Trustee considers this expense to be unnecessary.

The Trustee would like to see a monthly payment amount closer to the $1,045 net monthly income reflected in the Debtors' Amended Schedules I and J. At this level, all allowed claims could be repaid in less than the 60 month Applicable Commitment Period ("ACP") prescribed by 11 U.S.C. § 1325(b)(4).

2

It is an interesting dispute.  Unfortunately, neither side chose to present evidence at the March 30, 2012 hearing, so the record is lacking.  Essentially, the Court must decide this issue based on the record in the case, certain agreed facts, and the Winns' responses to the Court's questions at the hearing.

## DISCUSSION

**I.     The Objectionable Expense Items**

The Trustee suspects that the proposed house rent is too high.  The Court has the same suspicion.  A rental payment almost as high as the mortgage payment on the surrendered residence suggests the expense is excessive and perhaps unaffordable.  On the other hand, the Winns live in a town that boasts some of the most expensive real estate prices in the State.  Renting a home there may cost more than elsewhere.  Unfortunately, there is no evidence in the record upon which to make a finding either way.

The South Carolina property is not an essential expense.  This is an overencumbered property, so there is no equity to protect.  The Winns do not reside in the property, so it is not a necessity.  There is no suggestion that the property is rented, or if so, that the rentals exceed the monthly mortgage payment.  The Winns explain that they have tried unsuccessfully for three years to sell the property.  Like many real property owners, the Winns appear to think that if they hang on to the property, eventually the market will turn.  At that time, they will be able to sell, satisfy the mortgage, and perhaps recoup some of their investment.  Their aim, while understandable, is not likely to yield positive results over the life of the plan.

3

## II.   The Required Payment Amount

Although these two proposed expenditures are not essential, this Court is willing to permit the Winns to make these payments for one simple reason: Even under their proposed $490 per month payment, all allowed unsecured claims stand to be paid in full.

Seen in that perspective, the issue presented is purely a legal one: whether a debtor can use all 60 months of the ACP allotted under 11 U.S.C. § 1325(b)(4) to pay allowed claims in full, or must they do it in the shortest possible period by devoting all of their **monthly** proposed disposable income to the plan?  This is a case of first impression in this judicial district and perhaps nationally, since no reported cases have been located.

On the uncommon facts presented, I conclude that the Debtors may use the full 60 months and make monthly payments at the proposed $490 rate.

This dispute arises in the context of modifying an existing plan, but the issue is really a confirmation issue.  Under 11 U.S.C. §§ 1329(a)(1)-(3), a confirmed plan may be modified to:

> (1) increase or reduce the amount of payments on claims of a particular class provided for by the plan; (2) extend or reduce the time for such payments; [or] (3) alter the amount of the distribution to a creditor whose claim is provided for by the plan to the extent necessary to take account of any payment of such claim other than under the plan . . . .

11 U.S.C. §§ 1329(a)(1)-(3).

Even so, a modified plan must still comply with Code provisions governing "duration, contents and acceptance of a plan, as well as satisfaction of the criteria for confirmation under section 1325(a)."  11 U.S.C. § 1329; 8 Collier on Bankruptcy ¶ 1329.02, at 1329-4 (16th ed. 2011).

4

Under 11 U.S.C. § 1325(b)(1), a plan is confirmable over an objection if the Debtor's plan satisfies one of two prongs. The first, Subsection (b)(1)(A), stipulates that the plan must pay allowed claims in full: "[A]s of the effective date of the plan[,] the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim."  11 U.S.C. § 1325(b)(1)(A).  Alternatively, under Subsection (b)(1)(B), the Debtors must devote all of their projected disposable income to the plan: "[A]ll of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan."  11 U.S.C. § 1325(b)(1)(B).

Only one of the prongs need be met, not both.

The either/or structure of the statute appears to supply the answer in this case. The Winns' proposed modification will pay all allowed claims in full; thus, it meets the Section 1325(b)(1)(A) confirmation requirement.  While the modified plan does not propose to pay all of the Winns' projected disposable income to the plan[1] and fails to meet Section 1325(b)(1)(B)[2], this criterion need not be met.

The conclusion finds support in the wording of 11 U.S.C. § 1325(b)(4)(B), which states that the "'applicable commitment period' *may* be less than 3 or 5 years, whichever is applicable under subparagraph (A), but *only* if the plan provides for payment in full of

---

[1]The Winns' Form B22C Means Test reflects a $2,036.54 monthly disposable income.  Of course, the original B22C figure includes the mortgage payment on the surrendered Tryon property, so we know it is not an indicator of the Winns' present ability to pay creditors.  At $1,045, the monthly net income from the Winns' Amended Schedules I and J also reflects a larger monthly sum than their proposed payment.

[2] Section 1329 does not specifically require that a plan modification under Section 1329 comply with Section 1325(b).  The murky question of whether a modification must meet subpart (b), see generally 8 Collier on Bankruptcy ¶ 1329.03, at 1329-7; In re Braune, 385 B.R. 167 (Bankr. N.D. Tex. 2008), is a question that need not be decided here, as this proposed modification indisputably satisfies Section 1325(b)(1)(A).

5

all allowed unsecured claims over a shorter period." 11 U.S.C. § 1325(b)(4)(B) (emphasis added). Under a basic reading of this provision, it appears that a plan that provides for payment of all allowed unsecured claims *may* be completed earlier than the full length of the plan, but this is by no means necessary. While it may make sense for the Debtors to pay off their plan as early as possible, the Court has not found any statute or case law that would *require* the Debtors to do so.

**CONSEQUENTLY**, the Winns' Motion to Modify Plan is **GRANTED**. Debtors' Counsel is allowed a non-base fee of $350.00 for representing the Winns in this matter.

**SO ORDERED.**

This Order has been signed electronically.          United States Bankruptcy Court
The judge's signature and the Court's seal
appear at the top of the Order.

6